Michael A. JACKSON, Appellant,

v.

UNITED STATES, Appellee.

No. 79–834.

District of Columbia Court of Appeals.

Submitted Sept. 17, 1980.

Decided Dec. 4 1980.

Thomas G. Hagerty, Rockville, appointed by this court, was on the brief for appellant.

Charles F. C. Ruff, U.S. Atty., John A. Terry, John R. Fisher, Reggie B. Walton and Keith A. O'Donnell, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before NEBEKER and HARRIS, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Appellant was convicted of second-degree murder while armed, D.C. Code 1973, §§ 22–2403, –3202, and carrying a pistol without a license, D.C. Code 1973, § 22–3204. He was sentenced under the Federal Youth Corrections Act, 18 U.S.C. § 5010(c) (1976), to a term of imprisonment of up to ten years for second-degree murder, and received a concurrent sentence under 18 U.S.C. § 5010(b) on the weapons charge.

On this appeal appellant contends that (1) the trial court erroneously excluded an exculpatory hearsay statement; (2) he was denied effective assistance of counsel; and (3) he was denied due process of law. Finding no merit in any of these contentions, we affirm.

The government's evidence established that on the evening of March 28, 1978, Carol Maree was harassed and insulted by a group of young men, including appellant, as she walked into an ice cream parlor. Upon leaving the store, she was again accosted and insulted. Ms. Maree went home and reported the matter to her brother, David. The two of them returned to the ice cream parlor and discussed briefly with appellant and his companions the earlier harassment. Most of David Maree's comments were directed to appellant, after which they prepared to fight. The fight, however, developed between Maree and "Trouble", one of appellant's companions, who initiated it by jumping upon David's back. During the course of the fight appellant, who was watching from a short distance, was observed to pull a pistol from his jacket and fire one shot, hitting David Maree in the chest resulting in his death. Appellant was then observed to hand the pistol to "Trouble", after which he and his companions ran away.

There was no dispute that appellant was at the scene of the fatal shooting and involved in the altercation which preceded it, but in his defense, appellant claimed that he neither possessed nor fired the pistol. Several of appellant's companions called as defense witnesses testified also that a person other than appellant fired the fatal shot.

Detective McKinley Williams, one of the investigating police officers, was called as a witness for the government. On cross-examination, defense counsel asked Detective Williams: "Were you informed that the person that shot David Maree was the person who in fact was fighting him?" The witness responded, "Yes." Defense counsel then asked: "And that just before he was shot, the person that was struggling with David Maree backed up a few steps and shot him. Were you informed of that?" The prosecutor vigorously objected, arguing that the question called for inadmissible hearsay. Following a bench conference, the court sustained the objection, and Detective Williams completed his testimony without answering the question. The statement in question was made by one Joe Morgan, and was given to Detective Williams during the course of his investigation of the homicide. Appellant was furnished a copy of the statement, which contained the address and telephone number of Morgan. Morgan, however, was not called as a defense witness and when trial counsel sought to question Williams concerning the statement, the trial court ruled that the statement did not qualify as admissible evidence under any recognized exception to the hearsay rule.

Appellant urges that this court should carve out a new exception to the hearsay rule and hold the statement admissible based on the rationale of Rule 804(b)(5) of the Federal Rules of Evidence, which provides in pertinent part:

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having *equivalent circumstantial guarantees of trustworthiness*, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence. . . . (Emphasis added).

■ Aside from the fact that the Federal Rules of Evidence are not controlling in this court, the vice of appellant's argument is that the statement of Joe Morgan does not have sufficient "equivalent circumstantial guarantees of trustworthiness" to warrant its admission into evidence as an exception to the hearsay rule. In the first place, it lacks the conventional "indicia of reliability."[1] See Chambers v. Mississippi, 410 U.S. 284, 298, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973). Moreover, appellant has failed to demonstrate that the probability of trustworthiness in Morgan's statement "outweigh[s] the normal risks associated with the inherent dangers of hearsay statements." See Laumer v. United States, D.C.App., 409 A.2d 190, 194 (1979), citing McCormick, Law of Evidence § 245 (2d ed. 1972) and 5 Wigmore, Evidence §§ 1420–22 (3d ed. 1940).

Support for this result is found in a recently decided case, Ohio v. Roberts, —— U.S. ——, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). There, the Supreme Court was asked to determine whether in a criminal prosecution the admission into evidence of the transcript of testimony at the preliminary hearing was constitutionally permissible, when the declarant was unavailable for cross-examination. Concluding that the transcript was admissible under the peculiar facts of that case, the Court held that once a showing of unavailability is made, the "statement is admissible ... if it bears adequate indicia of reliability." Id. at ——, 100 S.Ct. at 2541.

In Roberts, the declarant testified under oath at the preliminary hearing, but was not available at trial. The Court resolved the issue of reliability, holding that "there was an adequate opportunity to cross-examine [the witness], and counsel ... availed himself [of] that opportunity, the transcript [therefore] bore sufficient 'indicia of reliability' and afforded the trier of fact a satisfactory basis for evaluating the truth of the

prior statement." Id. at ——, 100 S.Ct. at 2541–42, quoting Green v. California, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Moreover, said the Court, counsel's questioning of the declarant at the preliminary hearing was deemed to comport "with the principal purpose of cross-examination: to challenge 'whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.'" Id. at ——, 100 S.Ct. at 2541–42, quoting Davenport, The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv.L.Rev. 1378 (1972).

In the case at bar, the statement challenged as inadmissible hearsay was not made under oath, it was not made in the presence of the trier of fact, and no opportunity was afforded to test by cross-examination its truthfulness and accuracy. See Barber v. Page, 390 U.S. 719, 722–25, 88 S.Ct. 1318, 1320–1322, 20 L.Ed.2d 255 (1968). Consequently, if admitted in evidence, the jury would have been without a basis for assessing its reliability or judging the credibility of the declarant. Ohio v. Roberts, supra; Barber v. Page, supra. Since Morgan's statement falls so far outside any firmly rooted exception to the hearsay rule, and it could not arguably fit within Fed.R. Evid. 804(b)(5) (assuming its application in the District of Columbia court system), we cannot say that the trial court erred in excluding it from evidence.

■ Turning our attention now to the claim of ineffective assistance of counsel, we are even less impressed. Appellant has failed utterly in our view to demonstrate that trial counsel's failure to call Joe Morgan, the declarant, as a witness or offer the statement in evidence[2] amounted to inef-

---

1. The statement was not made under oath; was not made in the presence of a trier of fact; and the declarant was not subject to cross-examination. Barber v. Page, 390 U.S. 719, 722–

725, 88 S.Ct. 1318, 1320–1322, 20 L.Ed.2d 255 (1968).

2. Significantly enough "Trouble," later identified as Ricky Jackson "... the person who in

fective assistance of counsel. Under the standard set forth in *Angarano v. United States,* D.C.App., 312 A.2d 295 (1973), *rehearing denied,* 329 A.2d 453 (1979) (en banc), the deficiencies described in appellant's brief hardly rise to gross incompetence that blotted out the essence of a substantial defense. *Cf. Barber v. Page, supra* (holding that the state had not made a good faith effort to obtain declarant's presence at trial).

Indeed, as appellate counsel concedes "[t]rial counsel for appellant attempted to get into evidence indirectly that which he could not put in directly—the testimony of Joe Morgan, Jr. Joe Morgan, Jr. was absent from the jurisdiction and the proponent of his statement (Appellant) had been unable to secure his attendance. Therefore, the only alternative left to Appellant's trial counsel was to try and get Morgan's statement into evidence through the testimony of Williams, the police officer who had taken his statement." (Appellant's Br. at 7–8.)

After this damaging concession, neither appellant nor counsel on appeal can be heard to complain that Morgan's absence from the trial was attributable to trial counsel's ineffectiveness or incompetence.

■ Finally, appellant claims that he was denied due process of law under the Sixth and Fourteenth Amendments by the government's failure to remain apprised of the whereabouts of Morgan. The government's obligation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), required only that the prosecutor disclose before trial material evidence favorable to the accused. Here, the obligation was satisfied when appellant was furnished a copy of the exculpatory statement and the address and telephone number of the declarant. The clear language of *Brady* does not, in our opinion, support appellant's contention that the government must obtain and maintain the availability of an exculpatory declarant as well. The judgments of conviction are

*Affirmed.*

fact was fighting [David] . . .", was at one time charged with the first degree murder of David, but the charge was later dismissed and appel-

lant was indicted. At trial, Ricky Jackson was called as a witness for the defense and denied any knowledge of the person who shot David.